Good morning, Your Honor. We please support Angela Valenti-Romeo appearing for petitioner. This matter is here, a review from the BIA. By way of background, at the time of this initial hearing in front of the IJ, the petitioner was 17 years old from a village in Fujian province in China. At the time of her hearing, she was represented by counsel. She brought forth two witnesses that would have helped her testimony in her matter and had several other documents. The initial problem in this case started with service. The service, for whatever reason, counsel had a hostile attitude towards both the petitioner, it would appear, from the record, and from to her attorney. At one point during the presentation of one of her witnesses, counsel for the service had that witness detained, arrested, and removed from the courtroom on apparent belief that this person was out of status, when in fact that witness was not. He was an asylee who was here with permission at that point. Right at the heels of that, the second witness, the aunt of the petitioner, was put onto the stand and gave testimony, which the IJ seemed to find not supportive or not credible. Given the circumstances at that time, it's highly unlikely that the witness would have given any more than a perfunctory testimony. Yeah, but something as major as the bombing of the home. The problem with that is that during the time of the testimony, the transcript during the testimony, it was more question put onto this witness as to what her status was. How was she here? Why was she here? And she was not able to explain her particular status, which seemed to be the biggest push in the testimony at all. She has a lawyer she's represented. She's the witness. Oh, you're talking about the aunt now. The witness, which is the aunt of the petitioner, most of the testimony that she has, most of the questions that are directed at her are why are you here? How are you here? What is your status? And she wasn't fully able to answer these questions because she really didn't know. She was a derivative asylee. She was able to testify. You know, I went. I had an interview. They gave me a visa. At the point, the transcript, reading of the transcript, there's an overt hostility. I believe at that point the witness was intimidated. And in any other situation, this would be a substantive due process matter. But here it becomes an issue of the credibility of a witness, which the judge dismissed. Given the context, given the timeframe of what was happening, where less than an hour before, her brother was taken off and put into detention on a belief where, again, his status was challenged before he even had an opportunity to testify. Why that would have been relevant, his status or her status, to the testimony that they could have provided is unclear. But I don't understand the issue. Your client was represented by a lawyer at the hearing. Petitioner was represented by counsel at the time of the hearing. Counsel could have asked her questions. I believe that the transcript. It's either a yes or a no. He could have asked other specific questions, yes. And he could have asked her to describe the home that was bombed. The questions were directed towards the petitioner who testified that this was a photograph of her home. Wait a minute. You're missing my question. My question is counsel could have asked her about the home being bombed. Counsel could have asked the witness yes. So where does that leave us on the record as far as her not testifying about the bombing of the home? She testified to discussions she had with the petitioner's mother as to her political activities and whatnot, but there was no question to her related to the bombing of the home. No, petitioner's counsel did not direct a question to her at that time. I believe that based on the record, the transcript of the record, that the witness was frightened and intimidated, and for whatever reason that counsel failed to ask the question, it should not have been given a non-credibility finding as to the petitioner, because the petitioner did testify as to this was the home, this is what happened. And the I.J. made assumptions that were not necessarily provided for on the record, one that, oh, well, she should have testified to the bombing. The witness did not testify. Maybe the I.J. is right. She should have testified to the bombing. But my question really goes to it a little differently. If that's true, she's represented by a lawyer who then should have asked the question. If the lawyer knew something and decided he should not ask that question, how can we then tip over the I.J. because the lawyer failed to present the proper record? Petitioner was able to give testimony as to this is a photograph of the home. She testified to damage us to the home. There was nothing to contradict that what she said was less than truthful. The I.J. at that point then went to the petitioner and, well, there's no furniture. There's only a stove and a refrigerator, completely dismissing the fact that the petitioner was testifying that this is the room, this is the hole, what's different is the glass is cleaned up. The witness, the aunt, who is the sister of the petitioner's mother, didn't testify directly to, quote, the bombing. She testified to other matters concerning the petitioner's mother's activities. Whether or not she could have answered that question isn't on the record because the attorney for the petitioner failed to ask that question directly. But the petitioner was there and she testified as to the photographs and such. What about the how do we decide what we're going to do with the I.J.'s statement about the photograph? The I.J. looked at the photograph and found some problems with it as far as the I.J. was concerned as to its authenticity, but then says, I'm giving little weight. What do we do about the little weight dealing with credibility on the photograph? The I.J. stated that throughout the hearing that he was most concerned that there was the lack of furniture in a room. These people lived in the countryside. This wasn't an apartment in Beijing or an apartment in Shanghai. This was a home in the country. And the witness, the petitioner, consistently said, no, this is our living room. See, here's a stove and here's a refrigerator. The I.J. made assumptions that there should be furniture. There should be a rug. There should be something. There should be sofas. When in fact there is not. That part of it had nothing to do with furniture. Petitioner testified that what was different in the photos was glass had cleaned up. Neither the service was unable to verify conclusively that it was a bomb. Their own expert who reviewed the photograph said they weren't able to make that final determination. But the photographs are consistent with the petitioner's testimony as to the actions of the party officials towards her mother. Whether her aunt as a witness could have testified or given additional supplemental testimony as to the bombing damage is not there because the question was not asked, at least by the petitioner's then-attorney. They never called the uncle either. The uncle was scheduled to testify prior to the aunt. And before he could testify, he was arrested and detained based on the service's belief that he was here without status, when in fact he was an asylee. At that point, he refused to testify because he was afraid. He had already been detained once. He had been held. The judge said he would put over until later time when he was ready to testify. The witness said don't bother. The witness was at that the initial witness, the uncle, the petitioner's uncle, after his detainment indicated that he was fearful and afraid it would not appear again. Well, where is that on the record? There was a letter to the court adding that the attorney for petitioner stated that the uncle would not appear. No, it doesn't say why. Given the circumstances, if you come to court and you're going to testify. It doesn't say why. The record is unclear as to why, but he willingly was there initially to testify, and he would have testified but for the actions of the service, which before he had an opportunity to testify had this person detained wrongfully. The person was here with status. He was an asylee. He was here illegally at this point. Is that on the record? On the record, there is submitted in the record before the court a copy of the uncle's passport, which shows that he was an asylee and he had an indefinite stay. The record only indicates that the judge states that the uncle, this other witness has already been detained and won't be testifying, and they immediately proceed into the testimony of the aunt. But it's not made on the record as to the whole discussion as to why this witness was not allowed to testify, was not before the court. It seemed to have been a discussion that was off the record. It's not indicated anywhere other than, you know, this witness has been detained and they move right into the second one. Thank you, counsel. You have consumed all your time. Thank you. We'll now hear from Ms. Lightbody. You may proceed. Thank you. May it please the Court, my name is Jennifer Lightbody and I represent the respondent. The record evidence in this case does not compel the conclusion that Petitioner Yang is credible. Her aunt did not testify to an alleged bombing of the Petitioner's mother's house. This went to the core of the Petitioner's asylum claim. Was it clear from your examination of the record that the questioning by Mr. Yang's counsel should have elicited that? I mean, he didn't specifically say, well, did your house ever get bombed, but was there enough to establish a predicate on the basis of which she said, well, they punished me and they even bombed my house? Well, Your Honor, the actually there was an opportunity for counsel to have asked that question of this witness and the question was not asked. No, we know that. In terms of the questions that were asked, was there an adequate opportunity for her to volunteer that point? There was, but it actually didn't come necessarily from the attorney. It actually came from the immigration judge. At page 144 of the record, the immigration judge asked the witness, did your sister say anything else at all about the situation there in the village that was remarkable or stuck in your memory? Answer. She said that she will send my niece over to me to take care of, that there was some problems at home. So she had the opportunity to discuss or to tell the court about this bombing, and she didn't. And the I.J. draws a lot of inferences from that. That seems to be the thing that concerns the I.J. There's nothing inconsistent between the aunt's testimony and the Petitioner's testimony, correct? There's not. That is correct, Your Honor. So all the problem is not that the aunt is inconsistent with the Petitioner. It's just the aunt's testimony doesn't corroborate the Petitioner on this one issue of the bombing, right? That's correct, Your Honor. And from that, the I.J. drew certain inferences. Correct. Now, we have a Petitioner who has some evidence that of her story. She's got the picture, the letter from mom, the letter from the privileged person with the threat. The aunt does corroborate some of her testimony. Then we have this failure of the aunt to corroborate the bombing. Now, we ask you to take a look at Sudu and Salam. And there we have where an applicant produces credible evidence to buttress an aspect of his own testimony. That's her case here. And I.J. may not base an adverse credibility determination on the applicant's Now, the question that bothers me is what the I.J. did here. Doesn't it – can you tell me why Sudu and Salam doesn't indicate that he made a mistake? That is, she had the Petitioner here produced credible corroborative evidence, the letter, et cetera, on her own testimony. Then the I.J., in fact, in this case, developed an adverse credibility finding because there was not further support from the aunt. I understand the argument in the briefs, but if you can help me with this, I would be appreciative of why the I.J. didn't go off in the wrong direction in violation of Sudu and Salam by basing his credibility determination on the failure of the aunt to produce additional corroborative evidence. First of all, Your Honor, I would answer the question by saying that what is at issue before this Court is whether the Board's adverse credibility finding is based on substantial evidence. And this Court is obviously not a fact finder and can't sever part of the fact that some of the Petitioner's story is corroborated and some of it is not. It's not, it can't be severed. It's a matter of the whole package, so to speak. By way of example to illustrate this, taking it out of an immigration context and putting it in a criminal context. Let's say a defendant is accused of murder and the indictment charges that the murder was committed on Sunday. And the defendant comes forward and says, I have an alibi. I have an alibi witness who my alibi is that I was with witness A on Sunday when the murder occurred and I was with that witness in church all day. And he produces a witness and the witness says, I was with the defendant all day long on Sunday, the day of the murder, and we were at a bar having a drink all day. Well, part of the witness's test or part of the alibi is corroborated by that witness. But the fact, but there's a part of that that isn't corroborated. It's different and so. What you have with the IJ, it's a far ring from your analogy because we require the IJs to go through certain hoops. In the Ninth Circuit, we require certain things. We require them to say things and do things. It isn't just a matter of credibility. We've said on here that if, very specifically, that if the testimony of the Petitioner has its own credibility, you can't make an adverse credibility finding because of the failure of another witness to provide that. You see, going to analogy of the crime situation where we have a district judge that we apparently trust is not going to help you much because the IJs are required to do certain things and we say you can't do it. That's what the case is saying. So I don't think you can do analogies. You've got to tell us why these two cases do not hold that the judge did the wrong thing and why we don't have to send it back to redo the credibility determination. That's the issue. Well, because I think to answer your question, Your Honor, is that she produced a witness who didn't testify about an issue that goes to the heart of her claim. But I think Judge Wallace is making the point that for you to prevail, you have to establish that there was a conflict, not just the absence of corroboration, but there was a conflict in the testimony. Isn't that the problem? In other words, what is the predicate by which the IJ can make his credibility determination? Our cases say the absence of corroboration is not a basis. It has to be something that presents a conflict which the IJ then can properly resolve. But do we have enough of a conflict here? It's the government's position that there is enough of a conflict. She had an opportunity to testify about a substantial event that goes to the core of the petitioner's claim here. It's not the failure to corroborate. Set that aside. Is there a conflict? Not in what she didn't do, but what she did do. Is there a conflict? Is there a conflict? In the evidence. Again, it's the government's position that those can't really be severed, that it's all part of the finding by the immigration judge. Did the aunt testify that the mother was having some problems with respect to this secretary of the Communist Party in China? And, yes, the aunt did say, yes, she was having some problems. And to that part, yes, she is consistent with the petitioner's testimony. But there's a huge gap that can't really be severed out, where the aunt had an opportunity to discuss the bombing, didn't discuss the bombing. Failed to corroborate. And it's – and based on that, there was an adverse credibility finding. So she had to produce additional evidence to support her claim, and she hadn't done that. So I hope that I'm answering the Court's question. I'm not sure that I have. You did. You did. Thank you. I would also like to address a couple of other things that opposing counsel has raised. For the first time before this Court, she addresses the hostility of counsel for the INS, and I would submit to the Court that that has absolutely been waived. It wasn't raised in the opening brief, and this Court's case law holds that that issue would be waived, and I'm not sure of its relevance in any event. Also, there is a – Judge Hall, you had mentioned some questions concerning the uncle not testifying. I would submit to this Court that the Board's decision was not – there was no adverse credibility determination made for the uncle's failure to testify. There was – so the fact that he didn't testify has no bearing on the Board's decision and isn't really an issue before this Court. And Judge Wallace, you had asked, and I think I had addressed the issue about counsel not asking about the bombing, and clearly the IJ had given them the opportunity. I see that my time is up, and I just ask that the Court affirm the Board's decision because it's based on substantial evidence. Thank you, counsel. Your time has expired. The case just argued will be submitted for decision.
judges: Wallace, Hall, O' Scannlain